IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 17, 2017 Session

## STATE OF TENNESSEE v. BUFORD CORNELL WILLIAMS

**Appeal from the Criminal Court for Davidson County**
**No. 2014-C-2231      Monte Watkins, Judge**

_____

**No. M2017-00507-CCA-R3-CD**

_____

Defendant, Buford Cornell Williams, was convicted of selling 0.5 grams or more of cocaine. He received a fourteen-year sentence. On appeal, he argues that the evidence was insufficient to support his conviction. After review, we find that the evidence was sufficient to support his conviction. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Buford Cornell Williams.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn Funk, District Attorney General; and Kristen Kyle-Castelli, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Factual and Procedural History*

A Davidson County Grand Jury indicted Defendant for the sale of 0.5 grams or more of a substance containing cocaine. Defendant waived a jury trial. A bench trial was conducted on December 15, 2015, and the trial court found Defendant guilty. Defendant received a sentence of fourteen years to serve in the Tennessee Department of Correction. The following facts were adduced at trial.

On May 20, 2014, Detective Matthew Boguskie and his team of Metropolitan-Nashville police officers orchestrated a "buy-bust operation." These operations entailed a confidential informant purchasing drugs in order to catch the drug dealer during or immediately after the criminal conduct. Detective Boguskie's "very reliable" confidential informant made contact with William Thomas in the parking lot of a carwash near the intersection of Dickerson Road and Ewing Drive in Davidson County. Mr. Thomas allegedly worked at Prince's Chicken, which is adjacent to the carwash parking lot. From a distance of approximately fifty feet, Detective Boguskie observed the confidential informant strike up a conversation from his vehicle with Mr. Thomas in the carwash parking lot. Next, Mr. Thomas took the confidential informant's cellphone and made a phone call. About twenty minutes after the phone call, Defendant drove into the parking lot. Mr. Thomas approached the driver's side of the vehicle driven by Defendant, and Detective Boguskie "observed an interaction" between Defendant and Mr. Thomas. After the "interaction," Mr. Thomas got inside the confidential informant's vehicle. At that point, the confidential informant gave the take down signal. Approximately two minutes elapsed between the arrival of Defendant and the moment when the take down signal was given. Defendant, Mr. Thomas, and the confidential informant were arrested.

Prior to the beginning of the operation, the confidential informant and the vehicle driven by the confidential informant were thoroughly searched to ensure that no contraband was in the possession of the confidential informant. At that point, the confidential informant was stripped of any personal funds and provided with money that had been photocopied so that the serial numbers could be tracked by the police officers. After the take down signal was given, Sergeant Cary Briley arrested the confidential informant. As soon as Sergeant Briley approached the car, the confidential informant handed the Sergeant a "white rock in plastic." Sergeant Briley searched and handcuffed the confidential informant and searched the confidential informant's car. No other drugs or money were found. A field test indicated that the substance recovered was 0.7 grams of cocaine base. Detective Boguskie testified that in his experience 0.7 grams of cocaine has a street value of around fifty dollars. When the substance was tested in a laboratory, Laura Adams, a forensic scientist at the Tennessee Bureau of Investigation, found it to be 0.64 grams of cocaine base.

Detective Forrest Drake took Defendant into custody and *Mirandized* him. Defendant told Detective Drake that he was in the parking lot to get some chicken from Mr. Thomas. No chicken was found in the possession of Defendant, but fifty dollars was recovered from Defendant's right front pocket. The serial numbers on the money recovered from Defendant matched the money provided to the confidential informant to make the drug purchase.

Defendant chose to testify on his own behalf. He maintained that he was present in the carwash parking lot only to get some chicken from Mr. Thomas and to give Mr. Thomas a ride home. Defendant's explanation for not having any chicken in his possession at the time of his arrest was that "the officer didn't give [Defendant] a chance to pull around to the front of Prince's Chicken." He testified that he picked up Mr. Thomas in the carwash parking lot from time to time in order to give Mr. Thomas a ride home. On this particular occasion, Defendant pulled into the carwash parking lot, and Mr. Thomas approached his vehicle. Defendant asked Mr. Thomas, "Well, where my chicken at?" According to Defendant, Mr. Thomas responded, "'I'm going to get you your chicken, but here, I'm going to pay you the fifty that I owe you.'" At that point, Mr. Thomas showed Defendant some "dope" which he had concealed in his sock. Defendant recounted Mr. Thomas saying, "'Dude over there want a fifty. . . . I'm going to make this sale, but I don't really trust him.'" At that point, Mr. Thomas shut the door to Defendant's car and told Defendant to pull around to the front of Prince's Chicken. However, as Defendant was getting ready to pull out of the parking lot to go over to Prince's Chicken, Defendant was stopped by the police. Defendant claims that he was not told why he was arrested, but rather the police said, "'Don't worry about it.'"

*Analysis*

On appeal, Defendant argues that the evidence is insufficient to support his conviction because no direct evidence was presented that showed Defendant was a party to the drug sale. Defendant further maintains he offered a "perfectly plausible" explanation as to why he had possession of the money provided to the confidential informant to make the drug purchase. The State responds by arguing that the evidence is sufficient and that "[t]he trial court, by it[]s verdict, rejected Defendant's claim that he only wanted to get some hot chicken, collect some money Mr. Thomas owed him, and give him a ride home." We agree with the State that the evidence is sufficient.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. In a bench trial, the judge is the trier of fact, and "'the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict.'" *State v. Farrar*, 355 S.W.3d 582, 585 (Tenn. Crim. App. 2011) (quoting *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999)); *see also State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319

(1979).  On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom."  *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).  As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence."  *Matthews*, 805 S.W.2d at 779.  Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts.  *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).  "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'"  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"It is an offense for a defendant to knowingly . . . [s]ell a controlled substance[.]"  T.C.A. § 39-17-417(a)(3).  Cocaine is a Schedule II controlled substance.  T.C.A. § 39-17-408(b)(4).  A violation of Tennessee Code Annotated section 39-17-417(a) with respect to cocaine is a Class B felony if the amount involved is 0.5 grams or more.  T.C.A. § 39-17-417(c)(1).

In this case, Defendant was in possession of money provided to a confidential informant for the purchase of drugs mere minutes after cocaine was handed to the confidential informant.  The evidence, though circumstantial, shows that the confidential informant and Mr. Thomas made contact in the carwash parking lot and that Mr. Thomas made a call on the confidential informant's phone.  Mr. Thomas and the confidential informant waited twenty minutes, and the Defendant arrived.  Mr. Thomas had an "interaction" with Defendant.  Shortly thereafter, cocaine was in the possession of the confidential informant, and the photocopied money was in the Defendant's pocket.  Viewing the facts in a light most favorable to the State, one could reasonably infer that Mr. Thomas did not have the cocaine in his possession at the time that he initially made contact with the confidential informant because Mr. Thomas did not sell the cocaine to the informant immediately.  The legitimate inference which follows is that Defendant must have brought the cocaine to the parking lot because immediately after Defendant arrived, cocaine was in the possession of the confidential informant.  By its verdict, the trial court clearly discredited the Defendant's testimony that he was merely in the parking lot to get some chicken and give Mr. Thomas a ride.  We will not second-guess such credibility determinations on appeal.  *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).  The amount of cocaine base given to the confidential informant was 0.64 grams.  A rational trier of fact could deduce that Defendant knowingly sold 0.5 grams or more of cocaine to the confidential informant via Mr. Thomas.

*Conclusion*

For the aforementioned reasons, the judgment of the trial court is affirmed.


_____
TIMOTHY L. EASTER, JUDGE